**Bryan D. Fisher, LLC**
**Fisher Injury Lawyers**
Clifford R. Tucker, NY, NJ, EDNY
Bryan D. Fisher, LA Bar No.: 20812 & TX Bar No.: 24085913 (Pending *Pro Hac Vice* approval)
Thomas J. Fisher, TX Bar No.: 07064500 (Pending *Pro Hac Vice* approval)
6715 Perkins Road
Baton Rouge, LA 70808
Clifford@fisherinjurylawyers.com
Bryan@fisherinjurylawyers.com
Tommy@fisherinjurylawyers.com
Tel: 718-803-1234
Fax: 225-612-6813

Attorneys for, and *Pro Hac Vice* Attorneys for, Plaintiffs and the Proposed class

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X

Charles Salameno, Maria-Angela Sanzone, and John Jensen on behalf of themselves and all others similarly situated,

                Plaintiffs

-against-

GOGO INC. and GOGO LLC

             Defendants
-------------------------------------------------X

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Case No. 1:16-cv-00487

Hon.

ECF Case:

      1.      Plaintiffs Charles Salameno ("Salameno"), Maria-Angela Sanzone ("Sanzone") and John Jensen ("J. Jensen") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated throughout the United States (the "class" and "Subclass" as further defined below), by and through their undersigned attorneys, hereby complain and allege as follows:

<u>**INTRODUCTORY STATEMENT**</u>

      2.      Plaintiffs incorporate by reference and re-allege with the same force and effect all paragraphs previously alleged herein.

1

3. Businesses, with many times the money and power of individuals, must maintain a fair marketplace where trust, not deception, prevails to protect consumers and prevent unfairness, fraud, and abuse. See Exhibit "A".

4. Gogo LLC and Gogo Inc. (collectively "Gogo" or "Defendants") advertise and sell passes, subscriptions, and plans ("products") to consumers who wish to connect to the internet, access in-flight entertainment, text message, use voice communication, or access Defendants' other communication-related services while on airplane flights throughout the United States. Defendants represent to the public that their products give consumers continuous, reliable, secure, and safe communications services, which are comparable to ground-based communications services, all while in flight throughout the United States.

5. Defendants revealed to the United States Securities and Exchange Commission and the Federal Communications Commission, however, that their products are inherently limited, unreliable, not continuous, and cannot be compared, at all, to communications services on the ground. Furthermore, Defendants' intentionally designed their network to have the capacity to uncover more of their user's information than necessary under federal law. Despite knowing their network's exceeding ability to uncover consumer information, Defendants undermined computer programs designed to keep their consumers' communications of sensitive information secure and private.

6. Defendants exposed consumers and the public to misleading representations about their products, led consumers to buy the products, but provided much less than what consumers reasonably expected to buy. Moreover, consumers' use, or attempted use, of Defendants' products exposed consumers' sensitive communications and identifying information to malicious spying, tampering, and theft.

7.     Plaintiffs Charles Salameno, Maria-Angela Sanzone, and John Jensen bring this action, on their own behalves, on behalf of a nationwide class of consumers, and on behalf of a New York subclass of consumers to seek redress for Defendants' deception, unfairness, fraud, and abusive practices as described herein.

## JURISDICTION AND VENUE

8.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

9.     This Court has jurisdiction over the subject matter of this action by virtue of diversity of citizenship.  Plaintiffs are citizens of Ohio, New York, and Washington and Defendants, by their principal places of business, are citizens of Illinois.

10.     In addition, pursuant to the class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005) ("CAFA"), under 28 U.S.C. § 1332(d)(2), this Court has jurisdiction over all class actions where "any member of a class of plaintiffs is a citizen of a state different from any defendant and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs."  Because the proposed class that Plaintiffs seek to represent includes residents from all fifty states, the class necessarily includes citizens from states other than the states where Defendants are citizens.  The amount in controversy exceeds $5,000,000 because Defendants' have sold their products to as many consumers as fly on Defendants' 2,000 or more equipped commercial aircraft on over ten (10) major airlines.

11.     This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in New York, have sufficient minimum contacts with New York, and/or otherwise intentionally avail themselves of the laws and markets of New York through ownership of business property, and the promotion, sale, marketing, and/or distribution of Defendants' products in New York.  Further, Plaintiffs' claims arise out of Defendants' conduct within New York since

Plaintiffs Salemeno, Sanzone and other class members purchased Defendants' products at, or while flying to or from, John F. Kennedy International Airport and/or LaGuardia Airport, located in the County of Queens, within the City and State of New York.

12. Venue is proper in the Eastern District of New York by virtue of 28 U.S.C. § 3191. A substantial part of all the events or omissions giving rise to Plaintiffs Salameno's and Sanzones' claims occurred within this District. In particular, and as set forth more fully below, Plaintiffs Salameno and Sanzone (and countless other members of the proposed class) purchased Defendants' products while in airports located within the Eastern District of New York, namely John F. Kennedy International Airport and LaGuardia Airport.

## THE PARTIES

13. Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

14. Plaintiff Charles Salameno is citizen of the State of Ohio, who resides at 108 Becker Lane, Marietta, Ohio 45750.

15. Plaintiff Maria-Angela Sanzone is a citizen of the State of New York who resides at 303 Tenth Avenue, Unit 8B, New York, New York 10001.

16. Plaintiff John Jensen is a citizen of the State of Washington, who resides at 8555 135th Ave. SE, Newcastle WA 98059.

17. Defendant Gogo LLC is an operating subsidiary of Gogo Inc., a public company. Gogo LLC is a Delaware company based in Chicago, Illinois. Defendants sell products to access their aero-communication services (including but not limited to inflight internet, inflight entertainment, voice communication, video streaming, and broadband network connectivity) to travelers on various airlines. Defendant Gogo LLC's business address is 111 N. Canal St., Suite 1500, Chicago, Illinois 60606.

18.     Defendant Gogo Inc. is the parent corporation of Gogo LLC.  Defendant Gogo Inc. is incorporated in Delaware with its headquarters in 111 N. Canal St., Suite 1500, Chicago, Illinois 60606.  According to the 10-Q quarterly report that Gogo Inc. filed with the United States Securities and Exchange Commission (SEC), for the quarterly period ended June 30, 2015, "Gogo Inc. is a holding company, which through its operating subsidiaries is a provider of in-flight connectivity and wireless in-cabin digital entertainment."

## FACTUAL ALLEGATIONS

19.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

20.     Defendants claim to provide "in-flight internet, entertainment, text messaging, voice, and a host of other communications-related services" to the commercial and business aviation markets (hereinafter referred to as "aero-communication services"). Defendants have the "largest number of aircraft online" with "more than 2,000 commercial aircraft equipped with its service on more than 10 major airlines." Exhibit "B".  Defendants provide communications-related services to consumers flying Air Canada, Air Alaska, American Airlines, Delta Air Lines, Japan Airlines, United Airlines, U.S. Airways, Virgin Atlantic, Aero Mexico, and Virgin America.

21.     Defendants profit by selling their products--passes, subscriptions, and plans to consumers to access Defendants' aero-communications services while in flight.  Defendants' products are a "limited license" for consumers to access Defendants' network of aero-communications services while flying.

22.     Defendants describe, advertise, and market their products on their website, through airline companies, and in the news.

23.     Defendants lead consumers to buy their products through Defendants' website.

24. Defendants, on their website, make the following representations ("Defendants' representations" or "representations") to consumers:

A. That one of Defendants' products provides consumers with "60 minutes of continuous access on any single domestic Gogo equipped flight with any participating airline," See e.g. Exhibit "C";

B. Defendants' products can offer "continuous access," See e.g. Exhibit "D"

C. Defendants tell consumers to "24 hours of continuous access on any domestic Gogo equipped flight on any single participating airline," See e.g. Exhibit "E"

D. Defendants tell consumers to "stay connected with 24 hours of continuous access on Gogo equipped flights to the same airline," See e.g. Exhibit "F";

E. That one of Defendants' products provides consumers with "monthly unlimited internet," See e.g. Exhibit "G"

F. A video on Defendants' website narrates: "Gogo has built an uninterrupted network in the sky over the entire continental United States… With nothing but airspace between these towers and your plane, you're always getting the best connection … you can rest assured that it is reliable and safe…. I can't wait for 10,000 feet";

G. In addition to Defendants' website video saying as much, Defendants tell consumers that their products are "reliable and safe," See e.g. Exhibit "H"

H. Defendants' map displaying their products' "North American coverage," See e.g. Exhibit "I"

I. Regarding Defendants' products' speed: "Is Gogo fast? Is the sky blue? The Gogo experience is best compared to mobile broadband service on the ground —

except with a whole lot more altitude. All you need is a Wi-Fi enabled device, a Gogo account, and a burning desire to access exclusive in-air experiences available only on Gogo," See e.g. Exhibit "J"

J.     Regarding their products' security: "SSL-encrypted websites or pages can generally be securely accessed through the Gogo Inflight Service.  These sites are usually indicted (sic) by 'https' and a 'lock' icon in the address field.  The Gogo purchase path is secured with  SSL enctyption (sic) for example."  See e.g. Exhibit "K"

25.     Defendant GOGO INC.'s 10-K form for the fiscal year ended on December 31, 2014, submitted to the SEC states:

> "Our ATG network is inherently limited by the spectrum licensed and we are currently experiencing capacity constraints in the United States, particularly on certain flights where demand for our service is high and certain routes on which a number of aircraft are within range of the same cell site at one time, and we expect demand to continue to increase in the United States as penetration rates increase and our service becomes available on more aircraft."

26.     Defendant GOGO INC.'s 10-Q form to the SEC for the quarterly period ending on September 30, 2015 states, "There have been no material changes to the risk factors previously disclosed in our Annual Report on Form 10-K for the year ended December 31, 2014 as filed with the SEC on February 27, 2015."

27.     An August 26, 2015 online Bloomberg Business article titled, "Why Gogo's Infuriatingly Expensive, Slow Internet Still Owns the Skies" quotes:

A.     Former Gogo user and health-care executive Manuel Hernandez that: "The service is so unreliable at this point that I don't get a good enough ROI to spend $60 a month to maybe be able to download my e-mails."

B.     Pharmaceutical executive and frequent flyer Keith Lockwood that "They've got a monopoly, and they just don't care."

C.     Gogo CEO Michael Small that, "One of the reasons we get a bad rap out there sometimes is people compare what we do in the sky to the ground and just wonder why isn't it the same."

D.     Andrew De Gasperi, an analyst at Macquarie Group that: "The airlines have plenty of choices," "It's just that the passenger, who is the one who uses it, does not."

28.     Defendants were, and are, aware that SSL and TLS are cryptographic protocols intended and designed to secure users' communications made over the internet.

29.     Defendants were, and are, aware that the purpose of the SSL protocol is to provide privacy, security, and reliability to users communications made over the internet.

30.     Defendants intentionally designed their network's ability to reveal more of their consumers' information than is required under the Communications Assistance for Law Enforcement Act ("CALEA").  See Exhibit "L"

31.     On January 2, 2015, Google engineer Adrienne Porter Felt tweeted "hey @Gogo, why are you issuing *.google.com certificates on your planes."  See Exhibit "M"

32.     Defendants issued fake SSL certificates.

33.     Defendants' decision to issue fake SSL certificates needlessly exposed consumers' communications, of personal and vital information like credit card numbers and sign-up personally identifying information, to malicious hacking, tampering, theft, and spying.

**PLAINTIFF CHARLES SALAMENO**

34.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

35.     Plaintiff Salameno visited Defendants' website before buying one or more of Defendants products for use on flights throughout the continental United States, including but not limited to, flights entering and exiting New York airports within this District.

36.     On more than ten (10) different occasions during the class period, Plaintiff Salameno visited Defendants' website.  Plaintiff Salameno was exposed to one or more of Defendants' representations on Defendants' website.  Plaintiff Salameno justifiably relied on one or more of Defendants' representations.

37.     On more than one occasion, Plaintiff Salameno purchased one or more of Defendants' products through Defendants' website by providing truthful personally identifying information and his credit card information.

38.     On countless occasions for Plaintiff Salameno, the Defendants' products did not perform as represented or advertised.  At various times, Defendants' products functioned so slowly as to be useless, disconnected entirely, suffered interruptions, and/or crashed.  Moreover, unbeknownst to Plaintiff Salameno, use of Defendants products exposed Plaintiff Salameno's computer, mobile devices, and communications to spying, hacking, tampering, and theft.

**PLAINTIFF MARIA-ANGELA SANZONE**

39.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

40.     Plaintiff Sanzone visited Defendants' website before buying one or more of Defendants products for use on flights throughout the continental United States, including but not limited to, flights entering and exiting New York airports within this District.

41.     Plaintiff Sanzone was exposed to one or more of Defendants representations on Defendants' website.  Plaintiff Sanzone was led to rely on Defendants' representations.  Plaintiff Sanzone justifiably relied on one or more of Defendants' representations.

42.     On more than one occasion during the class period, Plaintiff Sanzone purchased one or more of Defendants' products through Defendants' website by providing truthful personally identifying information and credit card information.

43.     Approximately once per month for approximately three years, Plaintiff Sanzone tried to use one or more of Defendants' products.  Plaintiff Sanzone purchased Defendants' products most frequently for use on flights to and from New York airports LaGuardia Airport and John F. Kennedy International Airport.

44.     On countless occasions for Plaintiff Sanzone, the Defendants' products did not perform as represented or advertised.  At various times, Defendants' products functioned so slowly as to be useless, disconnected entirely, suffered interruptions, and/or crashed.  Moreover, unbeknownst to Plaintiff Sanzone, use of Defendants products exposed Plaintiff Sanzone's computer, mobile devices, and communications to spying, hacking, tampering, and theft.

45.     As a result of one of the aforementioned problems with Defendants' products, Plaintiff Sanzone filed a complaint via email to Defendants regarding their products.  Defendants gave Plaintiff Sanzone an access code for complimentary use of one of their products during another flight.  On a flight leaving a New York airport, Plaintiff Sanzone tried to redeem her complimentary access using the code, but Defendants' product failed to function at all.

## PLAINTIFF JOHN JENSEN

46.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

47.     Plaintiff J. Jensen visited Defendants' website before buying one or more of Defendants products for use on flights throughout the continental United States.

48.     Plaintiff J. Jensen was exposed to one or more of Defendants representations on Defendants' website. Plaintiff J. Jensen was led to rely on Defendants' representations. Plaintiff J. Jensen justifiably relied on one or more of Defendants' representations.

49.     On more than one occasion during the class period, Plaintiff J. Jensen purchased one or more of Defendants' products by providing truthful personally identifying information and credit card information.

50.     On countless occasions for Plaintiff J. Jensen, the Defendants' products did not perform as represented or advertised. At various times, Defendants' products functioned so slowly as to be useless, disconnected entirely, suffered interruptions, and/or crashed. At times, the Defendants' products would "spin" incessantly, not making any progress and not allowing him to access the benefit of any of Defendants' products. Moreover, unbeknownst to Plaintiff J. Jensen, use of Defendants products exposed Plaintiff J. Jensen's computer, mobile devices, and communications to spying, hacking, tampering, and theft.

51.     On countless occasions for Plaintiff J. Jensen, the Defendants' products did not perform as represented or advertised. At various times for Plaintiff J. Jensen, Defendants' products functioned so slowly as to be useless, disconnected entirely, suffered interruptions, and/or crashed. Moreover, unbeknownst to Plaintiff J. Jensen, use of Defendants' products exposed Plaintiff J. Jensen's communications to spying, hacking, tampering, and theft.

## CLASS ALLEGATIONS

52.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

53.     Plaintiffs bring this action on behalf of themselves and a proposed national class (the "National class") consisting of all others similarly situated, defined as:

A.     All legal and natural persons throughout the United States who, from January 30, 2010 up to and including the date of final judgment or amicable resolution of this action and approval thereof, were exposed to one or more of Defendants' representations; purchased Defendants' products for use on flights which occupied Federal Aviation Administration (FAA)-regulated United States airspace and/or flights which accessed or attempted to access any of Defendants' connectivity technology (including, but not limited to, cellular towers, satellites, modems, Wi-Fi antennas, wireless access points, servers, modulators or demodulators, adapters, radomes, and/or adapter plates); and who suffered injury due to the products' failure to function as represented and/or whose communications were exposed to malicious hacking, tampering or theft (hereinafter referred to as the "class" or "National class").

B.     Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, any officers or directors of Defendants, and the legal representatives, heirs, successors, and assigns of Defendants.

54.     The aforementioned class contains within it the "New York subclass" consisting of all other similarly situated New York residents, defined as follows:

A.     All legal and natural persons throughout the United States who, from January 30, 2010 up to and including the date of final judgment or amicable resolution of this action and approval thereof, were exposed to one or more of Defendants' representations; purchased Defendants' products for use on flights occupying New York airspace and/or flights which accessed or attempted to access connectivity technology (including, but not limited to, cellular towers, satellites, modems, Wi-Fi antennas, wireless access points, servers, modulators or

demodulators, adapters, radomes, and/or adapter plates) for the purpose of providing Defendants' communications-related services on flights throughout New York; and who suffered injury due to the products' failure to function as represented and/or whose communications were exposed to malicious hacking, tampering or theft (hereinafter referred to as the "subclass" and whose members are referred to as "subclass members").

       B.     Excluded from the New York subclass are Defendants, any entity in which Defendants have a controlling interest, any officers or directors of Defendants, and the legal representatives, heirs, successors, and assigns of Defendants.

55.    All New York subclass members are necessarily members of the National class and are incorporated by reference to "class members" and any reference to the class or the class members.

56.    Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

## **NUMEROSITY**

57.    Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

58.    class members and subclass members are so numerous and geographically dispersed that joinder of all members, whether otherwise required or permitted, is impracticable. On information and belief, there are thousands, if not millions, of consumers who are class and subclass members who have been damaged by, *inter alia*, Defendants' deceptive and misleading practices. By Defendants' own admission, Defendants provide their products for use on thousands of airplanes in North America. The precise number of class and subclass members and their addresses are

unknown to Plaintiffs but can be obtained from Defendants' records.  class members can be notified of the pendency of this action by mail, supplemented by published notice if necessary.

**PREDOMINANCE**

59.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

60.     The questions of law and fact common to the class members and subclass members which predominate over any questions which may affect individual class members include, but are not limited to:

A.     Whether Defendants violated General Business Law § 349 by making the aforementioned Defendants' representations to consumers and selling products which did not perform as represented.

B.     Whether the aforementioned Defendants' representations constitute false advertising under General Business Law §§ 350 and 350-a.

C.     Whether Defendants' failures to reveal material facts in light of Defendants' representations regarding its products constitute violations of General Business Law §§ 350 and 350-a.

D.     Whether Defendants' representations were made to the public and consumers at large.

E.     Whether Defendants' representations were likely to deceive reasonable consumers acting reasonably under the circumstances.

F.     Whether Defendants committed unlawful, fraudulent, and/or unfair business acts and practices by engaging in the acts and practices alleged herein including, but not limited to, by making Defendants' representations as set forth in this Complaint.

G.      Whether Defendants unjustly received a benefit at the expense of the Plaintiffs and the class members.

H.      Whether Defendants made each of the Defendants' representations knowing each was false.

I.      Whether Defendants made the aforementioned representations recklessly and without regard to truth or falsity.

J.      Whether Defendants made the aforementioned representations in a gross, willful, or wanton manner, with criminal indifference to civil obligations.

K.      Whether Defendants' representations were aimed at the general public.

L.      Whether Defendants made a clear and unambiguous promise that its products would provide "continuous" access through Defendants' "uninterrupted network" with the "best connection," "best compared to mobile broadband service on the ground," which was "reliable and safe" and secured with encryption.

M.      Whether Defendants formed contracts with each Plaintiff and class member to provide products functioning and secure products.

N.      Whether Defendants breached their contracts with Plaintiffs and the class members by failing to provide products that functioned in a continuous, reliable, and secure manner comparable to similar products on the ground for their contracted-for periods of time.

O.      Whether Plaintiffs suffered monetary losses by purchasing Defendants' products that failed to function as represented and for exposure of Plaintiffs' and the class members' communications to spying, hacking, tampering and/or theft.

P.      Whether Plaintiffs and the class members are entitled to injunctive relief.

**TYPICALITY**

61.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

62.     Plaintiffs are members of the class and subclass.  Plaintiffs are entitled to relief under the same causes of action as other class members and subclass members.

63.     Plaintiffs' claims are typical of the claims of each class member and subclass member, in that: Defendants made the aforementioned representations to the public, including to Plaintiffs and the class members. Plaintiffs and every class member visited Defendants' website where Defendants made the aforementioned representations. Plaintiffs and every class member purchased one or more of Defendants' products through Defendants' website. Plaintiffs and every class member provided truthful personally identifying information and credit card information to buy one or more of Defendants' products.  On one or more occasions, Defendants' products did not perform as advertised or represented for every Plaintiff and class member.  Use of Defendants' products exposed Plaintiffs' and every class member's communications to spying, hacking, tampering, and theft through Defendants' issuance of fake SSL certificates and network, which was intentionally designed to capture more than legally necessary amounts of their consumer's information.

64.     Plaintiffs and every class and subclass member suffered damage when Defendants' products failed to function as represented and exposed their communications to malicious spying, hacking and theft.

65.     Plaintiffs interests are substantially coextensive with the interests of the class and subclass.

## ADEQUACY OF REPRESENTATION

66.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

67.     Plaintiffs and Plaintiffs' counsel are adequate class and subclass representatives.

68.     Plaintiffs have retained counsel competent and experienced in complex class action litigation who intend to vigorously prosecute this action.

69.     Counsel has investigated Plaintiff's and the class members' claims and are knowledgeable of the applicable law.

70.     Plaintiffs and counsel have a strong interest in vindicating the Plaintiffs' class members' rights.

71.     Plaintiffs' and counsel's interests do not conflict with the interests of the class or subclass they seek to represent.

72.     Defendants have acted in a manner generally applicable to the class and subclass, making relief appropriate with respect to Plaintiff and the class and subclass members.

73.     Plaintiffs and counsel will fairly and adequately protect the interests of the class.

## SUPERIORITY

74.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

75.     A class action is superior to any other available method for the fair and efficient adjudication of the controversy because:

      A.     Common questions of law and fact predominate over any individual questions that may arise;

      B.     No member of the class has a substantial interest in individual controlling the prosecution of a separate action;

      C.     Upon information and belief, there are no pending lawsuits concerning this controversy;

D.      It is desirable to concentrate the litigation of these claims in this forum since the acts complained of took place in this district and this forum is convenient to the parties, the class members, and the potential witnesses.  The resolution of the claims of all class members in a single forum, and in a single proceeding, would be a fair and efficient means of resolving the issues raised in this litigation;

E.      Prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants;

F.      The class is specifically identifiable to facilitate provision of adequate notice  and there will be no significant problems managing this case as a class action;

G.      Resolution of class members' claims in this single class action is superior to resolution of this controversy through the filing of a host of individual actions as a matter of efficiency, consistency, and because it removes  economic and other barriers that confront individual class members' pursuit of individual claims;

H.      Individual litigation would unnecessarily increase the delay and expense to all parties and to the court system;

I.      Joinder of thousands, or more, individual class and subclass members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

J.      The individual claims of the class and subclass members may be relatively modest compared with the expense of litigating this claim, thereby making individual litigations impracticable, unduly burdensome, and expensive, if not totally impossible;

K.     When Defendants' liability has been adjudicated, all class and subclass members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if attempted through filing, discovery, and trial of all individual cases;

L.     This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims;

M.     Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action; and

N.     The class is specifically identifiable to facilitate provision of adequate notice and there will be no significant problems managing this case as a class action.

76.     **Notice** – Plaintiffs and his/her counsel anticipate that notice to the proposed class will be effectuated through direct notice both electronic mail and U.S. mail.

## FIRST CLAIM FOR RELIEF
### (New York General Business Law § 349)

77.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

78.     Plaintiffs, on behalf of themselves, the National class and the New York subclass, are persons who were injured by reason of one or more violations of General Business Law § 349 ("GBL § 349").

79.     Defendants conducted, and continue to conduct, a "business" or provide a "service" within the meaning of GBL § 349.

80.     Defendants made the aforementioned representations publicly, for years throughout the class period, and with knowledge or reckless disregard of their falsity and misleading nature.

81.     By making the aforesaid Defendants' representations, Defendants intended to defraud or mislead consumers into purchasing and trying to use Defendants' products.

82.     Defendants willfully and/or knowingly violated GBL § 349 because Defendants knew, or acted with reckless disregard, of the truth that the aforesaid representations were, and are, false and/or misleading.

83.     Defendants made the aforementioned representations with a high degree of moral turpitude or wanton dishonesty implying criminal indifference to civil obligations.

84.     Defendants made the aforesaid representations in consumer-oriented conduct by making them in publicly accessible places, including on Defendants' website, where consumers, like Plaintiffs and the class members, would learn about and decide whether to buy Defendants' products.

85.     Defendants' representations had a broad impact on consumers at large in that each representation was made publicly, with the intention of reaching consumers and/or affecting the marketplace.

86.     Defendants' representations had the potential to be repeated to deceive numerous similarly situated buyers.  Defendants' representations were of a recurring nature and affected the public interest.

87.     Defendants' representations were misleading in material ways in that each of them individually and collectively, *inter alia*, caused Plaintiffs and the class members to believe that Defendants' products would provide continuous, uninterrupted, reliable, secure, and/or safe access to Defendants' aero-communications services.

88.     Defendants' representations were each deceptive and likely to mislead reasonable consumers, including Plaintiffs and the class members, who were acting reasonably under the circumstances by looking at Defendants' website to learn about, and decide whether to buy and use, Defendants' products.

89. Defendants' representations induced Plaintiffs and the class members to purchase Defendants' products, despite those products' failure to live up to Defendants' representations.

90. Defendants' violation of GBL § 349 caused actual injury to Plaintiffs and the class and subclass members in, *inter alia*, causing pecuniary losses amounting to at least the purchase price of Defendants' products, which were dysfunctional, ineffective, unsecure, unsafe, unreliable and which did not perform as Defendants represented or as consumers reasonably expected.

91. Accordingly, as authorized by GBL § 349, Defendants should be enjoined from such unlawful acts and practices, ordered to pay restitution of any monies or property obtained directly or indirectly by any such unlawful acts, and ordered to pay costs, attorneys' fees, interest, and punitive damages in amounts to be determined at trial.

## SECOND CLAIM FOR RELIEF
### (New York General Business Law § 350)

92. Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

93. Plaintiffs on behalf of themselves, the National class and New York subclass, are persons who have been injured by reason of one or more violations of GBL § 350.

94. Defendants' representations, which advertised Defendants' products on their website, were materially misleading and/or likely to confuse reasonable consumers into believing that Defendants' products' time-allotted access to Defendants' aero-communications services would be:

    A.    Continuous;

    B.    Uninterrupted;

    C.    The best connection;

    D.    Reliable;

    E.    Safe;

F.  Unlimited;

G.  Comparable to mobile broadband services on the ground;

H.  Secure; and/or

I.  Secure with encryption.

95.  Defendants' aforementioned advertisements constitute multiple and separate violations of GBL § 350.

96.  Defendants' material misrepresentations forming the advertisements above were substantially uniform in content, presentation, and impact on consumers at large.

97.  Defendants engaged in false advertising by willfully and knowingly making the aforesaid representations and advertisements.

98.  Plaintiffs, the class and subclass members were exposed to Defendants' representations forming the false advertisements.

99.  Plaintiffs, the class and subclass members reasonably relied on Defendants' representations forming the above false advertisements.

100.  Plaintiffs and the class and subclass members were injured in, inter alia, witnessing Defendants' representations forming the false advertisements, reasonably relying on to purchase Defendants' products, and suffering pecuniary losses by buying Defendants' products that did not perform consistently with Defendants' representations or advertisements.

101.  As a result of Defendants' violation of GBL § 350, Plaintiffs, the class and the subclass members suffered damages in, inter alia, pecuniary losses amounting to at least the purchase price of Defendants' products, which were dysfunctional, ineffective, unsecure, unreliable and which did not perform as Defendants represented or as consumers reasonably expected, and which exposed their communications to spying, hacking, tampering, and theft.

102.     Accordingly, as authorized by GBL § 350, Defendants should be enjoined from such unlawful acts and practices, ordered to pay restitution of any monies or property obtained directly or indirectly by any such unlawful acts, costs, attorneys' fees, interest, and punitive damages in amounts to be determined at trial.

### THIRD CLAIM FOR RELIEF
### (General Business Law § 350-a(1)) BY OMISSION

103.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

104.     Defendants omitted crucial information regarding the security, reliability, and continuity of the access their products would provide to consumers.

105.     Defendants' omissions were material in light of Defendants' representations, which were contrary to the Defendants' statements released to the SEC and FCC about the reliability and security of their products.

106.     As a result of Defendants' violation of GBL § 350-a(1), Plaintiffs, the class and the subclass members suffered damages in, inter alia, pecuniary losses amounting to at least the purchase price of Defendants' products, which were dysfunctional, ineffective, unsecure, unreliable and which did not perform as Defendants represented or as consumers reasonably expected.

107.     Defendants knew of, or recklessly disregarded, the need to accurately describe their products in light of Defendants' representations.

108.     Defendants' dissemination of advertising through their representations containing material omissions of fact constitutes multiple, separate violations of GBL § 350-a(1).

109.     Defendant's material misrepresentations by way of omissions, as described in this Complaint, were substantially uniform in content, presentation, and impact upon consumers at large.

110.     Defendants' material omissions led the Plaintiffs, class and New York subclass members to buy the products by inducing their reliance on falsities in Defendants' representations.

111. As a result of Defendants' violation of GBL § 350-a(1), Plaintiffs, the class and the subclass members suffered damages in, inter alia, pecuniary losses amounting to at least the purchase price of Defendants' products, which were dysfunctional, ineffective, unsecure, unreliable and which did not perform as Defendants represented or as consumers reasonably expected.

112. Accordingly, as authorized by GBL § 350-a(1), Defendants should be enjoined from such unlawful acts and practices, ordered to pay restitution of any monies or property obtained directly or indirectly by any such unlawful acts, costs, attorneys' fees, interest, and punitive damages in amounts to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### (Violation of Various Consumer Protection Acts on Behalf of the class)

113. Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

114. Plaintiffs and the class members bring this statutory fraud claim pursuant to the substantially similar Consumer Fraud Acts of all United States, all of which were enacted and designed to protect consumers against unlawful, fraudulent, and/or unfair business acts and practices.[1] See e.g. the Illinois' Consumer Fraud and Deceptive Business Practice Act, 815 Ill. Comp. Stat. 505/a et seq. (the "Illinois Consumer Fraud Act").

---

[1] The following consumer protection acts are modeled after the Federal Trade Commission's consumer protection provisions and are collectively referred to herein, along with New Jersey's and New York's consumer protection statutes, as the "Consumer Fraud Acts": Ala. Code § 8-19-1 et seq. (Alabama); Alaska Stat. § 45.50.471 et seq. (Alaska); Ariz. Rev. Stat. Ann. § 44-1521 et seq. (Arizona); Ark. Code Ann. § 4-88-101 et seq. (Arkansas); Colo. Rev. Stat. § 6-1-105 et seq. (Colorado); Conn. Gen. Stat. § 42-110a (Connecticut); Del. Code Ann. Tit. 6, § 2511 et seq. (Delaware); D.C. Code Ann. § 28-3901 et seq. (District of Columbia); Fla. Stat. Ann, § 501.201 et seq. (Florida); Ga. Code Ann. § 10-1-390 et seq. (Georgia); Haw. Rev. Stat. § 481A-1 et seq. and Haw. Rev. Stat. § 480-1 et seq. (Hawaii); Idaho Code § 48-601 et seq. (Idaho); Kan. Stat. Ann § 50.623 et seq. (Kansas); Ky. Rev. Stat. § 367.11.0 et seq. (Kentucky); La. Rev. Stat. Ann. § 51:1401 et seq. (Louisiana); Me. Rev. Stat. Ann. Tit. 5, § 205-A et seq. (Maine); Md. Com. Law Code Ann. § 13-101 et seq., Md. Corn. Law Code Ann. § 13-301 et seq., Md. Corn Law Code Ann, § 13-408 et seq. (Maryland); Mass Gen. L. ch. 93A (Massachusetts); Mich. Stat. Ann. § 445.901 et seq., Mich. Stat. Ann. § 19.418(1) et seq. (Michigan); Minn. Stat. § 325F.68 et seq., Minn. Stat. § 8.31 (Minnesota); Miss. Code Ann. § 75-24-3 et seq. (Mississippi); Mo. Rev. Stat. § 407.010 et seq. (Missouri); Mont. Code Ann. § 30- 14-101 et seq. (Montana); Neb. Rev. Stat.§ 59-1601 et seq. (Nebraska); Nev. Rev. Stat. § 41.600 and Nev. Rev. Stat. § 598.0903 et seq. (Nevada); N.H. Rev. Stat. Ann. § 358:1 et seq. (New Hampshire); N.J. Rev. Stat. § 56:8-1 et seq., N.J. Rev. Stat. § 56:12-1 et seq. (New Jersey); N.M. Stat. Ann. § 57-1-2-1 et seq. (New Mexico); N.Y. Gen. Bus. Law. § 349 et seq. (New York); N.C. Gen. Stat. § 75-1 et seq. (North Carolina); N. D. Cent. Code § 51-15-01 et

115. Section 2 of the Illinois Consumer Fraud provides, in pertinent part that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act. 815 Ill. Comp. Stat. 505/2 (footnotes omitted)

116. Plaintiffs and the other members of the class have standing to assert claims under the Consumer Fraud Acts, because they are consumers within the meaning of the Consumer Fraud Acts and the Defendants' representations were addressed to the market generally and otherwise implicate consumer protections. At all relevant times, Defendants conducted "trade and commerce" within the meaning of the Consumer Fraud Acts. See e.g., 815 Ill. Comp. Stat. 505/1(f).

117. Defendants have committed unlawful, fraudulent, and/or unfair business acts and practices by engaging in the acts and practices alleged herein including, but not limited to, by making Defendants' representations as set forth in this Complaint.

118. Defendants intended that the Plaintiffs and other class members would rely on the unlawful, fraudulent, and/or business acts and practices alleged herein so that the Plaintiffs would buy Defendants' products.

---

seq. (North Dakota); Ohio Rev. Code Ann. § 1345.01 et seq. (Ohio); Okla. Stat. Tit. 15, § 751 et seq. (Oklahoma); Ore. Rev. Stat. § 646.605 et seq. (Oregon); Penn. Stat. § 201-1 et seq. (Pennsylvania); Laws of P. R. Ann. Tit. 10, § 259 et seq. (Puerto Rico); R.I. Gen. Laws § 6-13.1:1 et seq. (Rhode Island); S.C. Code Ann. 39-5-10 et seq. (South Carolina); S.D. Codified Laws Ann. 37-24.1 et seq. (South Dakota); Tenn. Code Ann. § 47-18-101 et seq. (Tennessee); Tex. Bus. & Comm. Code Ann. § 17.41 et seq. (Texas); Vt. Stat. Ann. Tit. 9, § 2451 et seq. (Vermont); Va. Code Ann. § 59.1-196 et seq. (Virginia); Wash. Rev. Code § 19.86.010 et seq. (Washington); W.Va. Code § 46A-6-101 et seq. (West Virginia); and Wyo. Stat. § 40;12-101 et seq. (Wyoming).

119. Defendants' actions, which were willful and wanton, constitute intentional violations of the Consumer Fraud Acts.

120. Defendants' unlawful, fraudulent, and/or unfair business acts and practices described herein are continuing in nature and are widespread practices.

121. Plaintiffs and the other members of the class have been damaged as a proximate result of Defendants' course of conduct and Defendants' violations of the Consumer Fraud Acts because Plaintiffs and the class members paid for products that they did not get the benefit of using as Defendants represented.

122. Accordingly, for violation of the various consumer protection acts, Defendants should be enjoined from such unlawful acts and practices, ordered to pay restitution of any monies or property obtained directly or indirectly by any such unlawful acts, be disgorged of any monies or property obtained directly or indirectly by any such unlawful acts, and ordered to pay costs, attorneys' fees, interest, and punitive damages in amounts to be determined at trial.

### FIFTH CLAIM FOR RELIEF
#### (Unjust Enrichment)

123. Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

124. By selling their products through unfair and deceptive practices, Defendants have engaged in inequitable conduct and have received a benefit at the expense of consumers, including Plaintiffs and the class members.

125. At the time of their purchase of the Defendants' products, Plaintiffs and the class members conferred a benefit—i.e. money and substantial revenue—on Defendants.

126. For the reasons described herein, the profits and/or benefits obtained by Defendants through sales of their products are to the detriment of Plaintiffs and the class members and violate fundamental principles of justice, equity and good conscience.

127.     Such benefits constitute unjust enrichment for Defendants, and it would be inequitable under the circumstances for Defendants to retain the benefits received.

128.     Accordingly, for unjust enrichment, Defendants should be enjoined from such unlawful acts and practices, ordered to pay restitution of any monies or property obtained directly or indirectly by any such unlawful acts, be disgorged of any monies or property obtained directly or indirectly by any such unlawful acts, and ordered to pay costs, attorneys' fees, interest, and punitive damages in amounts to be determined at trial.

## SIXTH CLAIM FOR RELIEF
### (Fraud)

129.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

130.     Defendants made the aforementioned Defendants' representations of fact.

131.     Each of the Defendants' representations was, and is, false.

132.     Defendants knew that each of the Defendants' representations was false or made each one recklessly without regard to whether it was true or false.

133.     Defendants made the aforementioned Defendants' representations to induce consumers at large, including Plaintiffs and the class members to buy Defendants' products.

134.     Plaintiffs and the class members relied on Defendants' representations in deciding to buy and try to use Defendants' products.

135.     Defendants made the aforementioned Defendants' representations in a gross, wanton or willful manner or with criminal indifference to civil obligations by making them for years and with knowledge of their falsity.

136.     Defendants made the aforementioned Defendants' representations in grossly and highly morally culpable manner aimed at the general public by, *inter alia*, making the representations

for an extensive and prolonged period of time on their website while fully aware of the limits and risks of their products.

137.     Defendants' fraud actually injured Plaintiffs and the class and subclass members in an amount to be proven at trial and in, *inter alia*, causing pecuniary losses amounting to at least the purchase price of Defendants' products, which were dysfunctional, ineffective, unsecure, unreliable and which did not perform as Defendants represented.

138.     Accordingly, for fraud, Defendants should be enjoined from such unlawful acts and practices, ordered to pay restitution of any monies or property obtained directly or indirectly by any such unlawful acts, be disgorged of any monies or property obtained directly or indirectly by any such unlawful acts, and ordered to pay expectancy damages, costs, attorneys' fees, interest, and punitive damages in amounts to be determined at trial.

**SEVENTH CLAIM FOR RELIEF**
**(Promissory Estoppel)**

139.     Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

140.     Defendants made a clear and unambiguous promise in Defendants' representations that: consumers who buy Defendants' products would receive "continuous" access through Defendants' "uninterrupted network" with the "best connection," "best compared to mobile broadband service on the ground," which is "reliable and safe" and secured with encryption (hereinafter referred to as "Defendants promise").

141.     Plaintiffs and the class and subclass members relied on Defendants' promise of the functionality and security of Defendants' products.

142.     Defendants could reasonably foresee that consumers, including Plaintiffs and the class members, would rely on the aforementioned promise in determining whether Defendants'

products were worth buying, would function appropriately, and would keep their communications and information secure.

143.    Defendants' purpose in making the aforementioned promise was to induce consumers, including Plaintiffs and the class and subclass members, to buy and try to use Defendants products.

144.    Plaintiffs and the class and subclass members reasonably relied on the Defendants' promise when they visited Defendants' website and saw Defendants' representations which formed their promise, then bought and used, or tried to use, Defendants' products.

145.    Defendants' promise actually injured Plaintiffs and the class and subclass members in an amount to be proven at trial and in, *inter alia*, causing pecuniary losses amounting to at least the purchase price of Defendants' products, which were dysfunctional, ineffective, unsecure, unreliable and which did not perform as Defendants represented or as consumers reasonably expected.

146.    Accordingly, for promissory estoppel, Defendants should be enjoined from such unlawful acts and practices, ordered to pay restitution of any monies or property obtained directly or indirectly by any such unlawful acts, be disgorged of any monies or property obtained directly or indirectly by any such unlawful acts, and ordered to pay costs, attorneys' fees, interest, and punitive damages in amounts to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
**(Breach of Contract)**

147.    Plaintiffs incorporate by reference and re-allege, with the same force and effect, all paragraphs previously alleged herein.

148.    Defendants formed contracts with all consumers, including Plaintiffs and the class members, who purchased Defendants' products.

149.    Defendants' contract required that, inter alia, Plaintiffs and the class members submit accurate account registration information and payment.

150.     Plaintiffs and the class members performed the aforementioned required tasks under the contract with Defendants.

151.     In exchange for providing accurate account information and payment, Defendants contracted to provide Plaintiffs and the class members with their products--limited licenses to access Defendants' network via subscription plans and internet passes permitting use of Defendants' aero-communications services for set periods of time.

152.     Defendants breached contracts with Plaintiffs and the class members by failing to provide products with the actual access or license to access the Defendants' aero-communications services after Defendants collected payment and account information from Plaintiffs and the class members.

153.     Defendants' breaches of contract actually injured Plaintiffs and the class and subclass members in an amount to be proven at trial and in, *inter alia*, causing pecuniary losses amounting to at least the purchase price of Defendants' aero-communication services.

154.     Accordingly, for breach of contract, Defendants should be enjoined from such unlawful acts and practices, ordered to pay restitution of any monies or property obtained directly or indirectly by any such unlawful acts, be disgorged of any monies or property obtained directly or indirectly by any such unlawful acts, and ordered to pay expectancy damages, costs, attorneys' fees, interest, and punitive damages in amounts to be determined at trial

## PRAYER FOR RELIEF

155.     WHEREFORE, Plaintiffs, in each of their own behalves and on behalf of the classes, pray for relief as set forth below:

        A.     For an Order certifying the National class and the New York sub-class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) and appointing

Plaintiffs Charles Salameno, Maria-Angela Sanzone and John Jensen, and their counsel, to represent the classes;

B.      For an Order awarding Plaintiffs and the other class members restitution, reliance, statutory, and punitive damages in amounts that will be proven at trial;

C.      For an Order disgorging Defendants of unjustly obtained benefits and other equitable relief as the Court deems proper;

D.      For an Order granting injunctive relief on behalf of the National class and New York sub-class, enjoining Defendants unlawful and deceptive acts; For an Order awarding Plaintiffs and the class and subclass members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses; and

E.      For an Order awarding such other and further relief as this Court may deem just and proper;

## DEMAND FOR JURY TRIAL

156.    Plaintiffs hereby demand a trial by jury of all claims set forth above that are so triable.

Dated: New York, New York
     January 29, 2016

Respectfully submitted,

_Clifford R. Tucker_

Clifford R. Tucker, NY, NJ, EDNY
Bryan D. Fisher, LA Bar No.: 20812 & TX Bar
No.: 24085913 (Pending *Pro Hac Vice* approval)
Thomas J. Fisher, TX Bar No.: 07064500
(Pending *Pro Hac Vice* approval)
**Bryan D. Fisher, LLC**
**Fisher Injury Lawyers**
6715 Perkins Road
Baton Rouge, LA 70808
Clifford@Fisherinjurylawyers.com
Bryan@fisherinjurylawyers.com
Tommy@fisherinjurylawyers.com
Tel: 718-803-1234
Fax: 225-612-6813
Counsel and *Pro Hac Vice Counsel* for Plaintiffs
and the Proposed classes