UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHARLES SALAMENO, MARIA-ANGELA SANZONE and JOHN JENSEN, on behalf of themselves and all others similarly situated,<br><br>         Plaintiffs,<br><br>   – against –<br><br>GOGO INC. and GOGO LLC,<br><br>         Defendants. | AMENDED MEMORANDUM & ORDER<br><br>16-CV-0487<br><br>FILED<br>IN CLERK'S OFFICE<br>U.S. DISTRICT COURT E.D.N.Y.<br>★ JUL 2 5 2016 ★<br>BROOKLYN OFFICE |

**Parties**

**Charles Salameno**
**Maria-Angela Sanzone**
**John Jensen**

**Appearances**

**Clifford Tucker**
Fisher Injury Lawyers
6715 Perkins Road
Baton Rouge, LA 70808
Tel: 718-803-1234
Fax: 225-612-6813
clifford@fisherinjurylawyers.com

**Gogo Inc.**
**Gogo LLC**

**Anthony Joseph Laura**
Epstein Becker Green
250 Park Avenue
New York, NY 10177
(212) 351-4500
alaura@ebglaw.com



1

JACK B. WEINSTEIN, Senior United States District Judge:

**Table of Contents**

I. Introduction ........................................................................................................2
II. Plaintiffs' Cross-Motion to Strike .....................................................................3
III. Facts ...................................................................................................................5
   A. Parties ............................................................................................................5
   B. Purchasing Gogo's Product ...........................................................................6
   C. Gogo's Terms of Use ....................................................................................9
IV. Motion to Compel Arbitration .........................................................................10
   A. Law ..............................................................................................................10
   B. Application of Law to Facts ........................................................................11
      1. Plaintiffs consented to the terms of use ..................................................11
      2. Plaintiffs' claims fall within the arbitration clause .................................14
      3. There are no non-arbitrable federal claims .............................................15
V. Conclusion .......................................................................................................15

## I. Introduction

Defendants Gogo Inc. and Gogo LLC (collectively, "Gogo") provide internet access on airplanes. Plaintiffs Charles Salameno, Maria-Angela Sanzone, and John Jensen are dissatisfied customers who repeatedly used Gogo's product over a period of months or years. Plaintiffs commenced this action, on behalf of themselves and all others similarly situated, alleging violations of consumer protection statutes and making claims for breach of contract, fraud, promissory estoppel, and unjust enrichment.

Gogo has moved to compel arbitration, transfer venue, or, alternatively, to dismiss the complaint for failure to state a claim. Plaintiffs have cross-moved to strike an affidavit and attachments that Gogo submitted with its moving papers.

Gogo's motion to compel arbitration is granted. The company's terms of use bind plaintiffs. Sophisticated business travelers who repeatedly purchased and used Gogo's product can be assumed to have been aware of the arbitration clause where they repeatedly ordered the service.

Plaintiffs' cross-motion to strike is denied. The type of information and evidence provided in the affidavit and accompanying exhibits are appropriately considered on motions to compel arbitration and to transfer. They are also appropriately considered on a motion to dismiss because they are integral to plaintiffs' claims.

## II. Plaintiffs' Cross-Motion to Strike

In support of its motion, Gogo submitted the Declaration of Sara Rossio and three exhibits. The exhibits are a picture of the account creation page on Gogo's website and two versions of Gogo's terms of use. *See* Decl. of Sara Rossio, May 23, 2016, ECF No. 20 ("Rossio Decl."). Gogo submitted a second declaration with its reply papers, attaching a copy of an e-mail that was sent to a customer confirming purchase of Gogo's product. *See* Reply Decl. of Sara Rossio, June 23, 2016, ECF No. 29 ("Rossio Reply Decl."). The parties also produced at the hearing, pursuant to the court's order, a webpage screenshot of the webpage plaintiffs would have seen when signing into their existing accounts. *See* Letter from Anthony J. Laura, June 29, 2016, ECF No. 32, at Exs. A-B.

Plaintiffs contend that because these materials are neither integral to the Amended Complaint nor are subject to judicial notice, they cannot be considered on a motion to dismiss. *See* Mem. of Law in Supp. of Pls.' Cross-Mot. to Strike Certain Matters Outside the Pleadings or in the Alternative to Treat Defs.' Mot. as one for Summ. J., June 13, 2016, ECF No. 23-1 ("Mot. to Strike"). They are wrong for two reasons.

First, Gogo's motion is not simply a motion to dismiss. It is also, alternatively, a motion to compel arbitration and to transfer venue. Considering material outside the pleadings is not only appropriate, but necessary on such motions. *See Greenberg v. Ameriprise Fin. Servs.*, No. 15-CV-3589, 2016 WL 3526025, at *5 (E.D.N.Y. Mar. 31, 2016) (motion to compel arbitration); *Guida v. Home Sav. of Am., Inc.*, 793 F. Supp. 2d 611, 613 n. 2 (E.D.N.Y. 2011) (same); *Citibank, N.A. v. Affinity Processing Corp.*, 248 F. Supp. 2d 172, 176 (E.D.N.Y. 2003) (motion to transfer venue); *Flood v. Carlson Restaurants Inc.*, 94 F. Supp. 3d 572, 578 n. 4 (S.D.N.Y. 2015) (same).

Second, the materials Gogo submitted are integral to plaintiffs' claims. Generally, on a motion to dismiss for failure to state a claim, a court may consider only the factual allegations in the complaint, evidence attached to or incorporated by reference in the complaint, judicially noticeable matters, and documents in a plaintiff's possession or of which a plaintiff had knowledge and relied on in bringing suit. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016); *Nicosia v. Amazon.com, Inc.*, 84 F. Supp. 3d 142, 148 (E.D.N.Y. 2015) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

An item of evidence "integral" to the complaint is properly considered on a motion to dismiss. The Court of Appeals for the Second Circuit has explained that "[a] document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" *Goel*, 820 F.3d at 559 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

Plaintiffs' claims center on the terms of their contractual relationship with Gogo, and the service Gogo was to provide pursuant to those terms. The contract itself – here the terms of use – is "integral" to the complaint, and may be considered on a motion to dismiss. *See, e.g., Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005); *Wilson v. Kellogg Co.*, 111 F. Supp.

4

3d 306, 311 (E.D.N.Y. 2015), *aff'd*, 628 F. App'x 59 (2d Cir. 2016) (website terms and conditions found integral to breach of contract case); *Nicosia*, 84 F. Supp. 3d at 148-49 (evaluating motion to dismiss in favor of arbitration under a 12(b)(6) standard, considering "a copy of the final purchase screen Plaintiff viewed prior to making his purchases, as well as the 2012 Conditions of Use which were hyperlinked on that page," as integral to plaintiff's complaint).

The exhibits Gogo submitted with its moving papers are appropriately considered on a motion to compel arbitration, transfer venue, and dismiss. Plaintiffs' cross-motion to strike is denied.

## III. Facts

### A. Parties

Plaintiff Charles Salameno, formerly a resident of New York, was a resident of Ohio when he brought this case. Am. Class Action Compl., May 2, 2016, ECF No. 14, at ¶ 14. He purchased Gogo's product on at least three occasions. *Id.* at ¶ 52. Maria-Angela Sanzone is a resident of New York who purchased Gogo's product approximately once per month for approximately three years. *Id.* at ¶¶ 15, 56. John Jensen is a resident of Washington who, since 2011, paid for Gogo's product at least 534 times. *Id.* at ¶¶ 16, 60.

Gogo Inc., a Delaware corporation, is the parent company of Gogo LLC. *Id.* at ¶ 17. Gogo offers "a full suite of in-flight internet connectivity and other voice and data communications products and services" to passengers on airplanes. *Id.* at ¶ 18 (citing Gogo Inc., Form S-1 Registration Statement, Dec. 22, 2011 (available at http://1.usa.gov/1V2pATI)). To access Gogo's services, passengers can purchase subscription plans and internet passes. *Id.* at ¶ 20. Gogo provides its service on more than 2,000 commercial aircraft on more than 10 major airlines. *Id.* at ¶ 19, Ex. A.

5

**B. Purchasing Gogo's Product**

In order to purchase Gogo's service, a customer must follow a two-step process. First, he or she must create an account on Gogo's website. This step requires input of his or her name and e-mail address, and creation of a password. *Id.* at ¶¶ 42-43. The user must then accept Gogo's privacy and cookie policy and terms of use. Rossio Decl. at ¶ 6. Screenshots of the account creation pages as depicted on an aircraft passenger's computer are duplicated below:



Am. Class Action Compl. at Ex. P.



*Id.* at Ex. Q (text box added).

Following the creation of the account, a customer can purchase a subscription or pass. Gogo offers several different options, varying by duration of access and airline, to choose from. *Id.* at ¶¶ 46-47, Exs. S-AB. According to plaintiffs, only four of Gogo's ten products' purchase

7

screens include the statement "By clicking the button below, you understand and agree to these terms and Gogo's privacy & cookie policy and terms of use." *Id.* at ¶ 47, Exs. Y-AB. Once a subscription or pass is purchased, a confirmation e-mail is sent to the customer; the e-mail includes a hyperlink to Gogo's terms of use. Rossio Decl. at ¶ 19; Rossio Reply Decl. at Ex. 4.

Each time a purchaser returned to Gogo's website to sign-in to his or her account, the user would encounter a page with text that reads "By clicking 'Sign In' I agree to the terms of use and privacy policy." The phrase "terms of use" was hyperlinked, enabling the user to access and review them prior to signing in. Rossio Decl. at ¶ 7. A screenshot of an example of the sign-in page is recreated below:



Letter from Anthony J. Laura, June 29, 2016, ECF No. 32, at Ex. B.

## C. Gogo's Terms of Use

Gogo's terms of use contain arbitration and forum selection clauses. After December 2012, these clauses were in the terms of use plaintiffs agreed to repeatedly. Rossio Decl. at ¶¶ 11-12.

The arbitration clause requires that all disputes, except for those which can be brought to a small claims court, be arbitrated under the rules of the American Arbitration Association:

> You agree that the sole and exclusive forum and remedy for any and all disputes and claims that cannot be resolved informally and that relate in any way to or arise out of the Site, the Service or these Terms and Conditions, shall be final and binding arbitration . . . As a limited exception to the agreement to arbitrate, you and we agree that you may take claims to small claims court, if your claims qualify for hearing by such court.

*Id.* at Ex. 2, § 10; *see also id.* at Ex. 3, § 11. The arbitration clause also contains an opt-out provision in capital letters:

> YOU HAVE A RIGHT TO OPT-OUT OF THIS ARBITRATION AGREEMENT. IF YOU DO NOT AGREE TO THIS MANDATORY ARBITRATION PROVISION WITH REGARD TO ANY PARTICULAR INTERACTION WITH THE SITE OR THE SERVICE, THEN WITHIN THIRTY (30) DAYS FROM THE DATE OF SUCH INTERACTION, YOU MAY OPT-OUT OF THIS PART OF THE AGREEMENT BY EITHER CALLING 1-877-350-0038 OR BY SENDING AN EMAIL TO customeroare@gogoair.com. Any opt-out received after the thirty (30) day time period will not be valid and you must pursue your claim via arbitration pursuant to these Terms.

Rossio Decl. at Ex. 2, § 10; *see also id.* at Ex. 3, § 11.

The forum selection clause requires that any claim that is not resolved through arbitration be resolved by a court in Chicago, Illinois:

> The parties agree that any claim or dispute one party has against the other party arising under or relating to this Agreement (including claims in contact, tort, strict liability, statutory liability, or other claims) that is not resolved under Section 10 of this Agreement (Dispute Resolution / Arbitration) must be resolved

9

exclusively by a court of competent jurisdiction, federal or state, located in Chicago, Illinois, and no other court. Each party agrees to submit to the personal jurisdiction of such courts and to accept service of process from them.

Rossio Decl. at Ex. 2, § 12; *see also id.* at Ex. 3, § 13.

## IV. Motion to Compel Arbitration

### A. Law

"The threshold question facing any court considering a motion to compel arbitration is . . . whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). If such an agreement exists, the court must evaluate whether the claims asserted fall within the agreement's scope. If claims arising under federal law are asserted, the court must also consider whether Congress intended those claims to be nonarbitrable. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004). Where an agreement exists, asserted claims fall within the scope of the agreement, and there is no indication that Congress intended any asserted federal claims to be nonarbitrable, the arbitration agreement should be "rigorously enforce[d] . . . according to [its] terms." *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013).

There are differing views within the Second Circuit as to the appropriate standard to use in performing this analysis. Some courts have held that "a standard similar to that applicable for a motion for summary judgment" should be used, while others have applied a 12(b)(6) motion to dismiss standard. *Compare, e.g., Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (applying a summary judgment standard) *with Nicosia*, 84 F. Supp. 3d at 147 (applying a motion to dismiss standard).

As a contract, an arbitration agreement requires an offer and a knowing acceptance. "'Mutual manifestation of assent' is the 'touchstone' of a binding contract. A 'transaction,' even

10

if created online, 'in order to be a contract, requires a manifestation of agreement between the parties' as to its terms." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015) (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29-30 (2d Cir. 2002)). In today's electronic world, online retailers often offer their services pursuant to terms of use shown on the computer used to order a product or services. Manifestation of assent to a website's terms of use may be demonstrated in different ways. Some websites require assent by checking of a box or clicking of a button – this is known as a "clickwrap agreement." *Berkson*, 97 F. Supp. 3d at 397.

Other websites deem consent to be given when the user signs an account – this is known as a 'sign-in-wrap agreement.' *Id.* at 399. Sign-in-wrap agreements have been found to be enforceable in three circumstances, each of which emphasizes "an effective opportunity to access terms and conditions:" first, "where the hyperlinked 'terms and conditions' is next to the only button that will allow the user to continue use of the website;" second, "where the user 'signed up' to the website with a clickwrap agreement and was presented with hyperlinks to the 'terms of use' on subsequent visits; and third, "where notice of the hyperlinked 'terms and conditions' is present on multiple successive webpages of the site." *Id.* at 400-01.

### B. Application of Law to Facts

Plaintiffs were repeatedly given adequate notice of the terms and conditions – including the arbitration agreement. Their claims are within the scope of the arbitration agreement. There is no indication that any of plaintiffs' claims are non-arbitrable.

#### 1. Plaintiffs consented to the terms of use

In order to purchase Gogo's product, plaintiffs were presented with a webpage that required them to click a button near the statement "By clicking this button, you agree to Gogo's privacy & cookie policy and terms of use." *See* Am. Class Action Compl. at Exs. P & Q. The "terms of use" were hyperlinked so that plaintiffs could review the terms before making their

purchase. This constituted a clickwrap agreement. Then, each time plaintiffs signed-in to use Gogo's product, they were again presented with a webpage that contained the terms of use hyperlink. This constituted a sign-in-wrap agreement. Rossio Decl. at ¶ 7. Additionally, upon purchase, plaintiffs were sent a confirmation e-mail that also contained a hyperlink to Gogo's terms of use. *Id.* at ¶ 19; Rossio Reply Decl. at Ex. 4. Similar combinations of clickwrap and sign-in-wrap agreements are enforceable. *See Berkson*, 97 F. Supp. 3d at 400-01.

Plaintiffs argue that these agreements are not enforceable because they were never provided with adequate notice of the terms of use, and thus never consented to the provisions contained within them. They contend that the "terms of use" hyperlink was inconspicuous, with nothing being done by Gogo to specifically draw their attention to the link. *See* Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Compel Arbitration, Transfer Venue or, in the alternative, to Dismiss the Am. Class Action Compl., June 13, 2016, ECF No. 22 ("Opp'n Br."), at 14-21.

In support of their argument, plaintiffs rely heavily on this court's decision in a prior case involving Gogo. *See id.* (citing *Berkson*, 97 F. Supp. 3d at 403). In that case, the court found that the arbitration clause in Gogo's terms of use was an unenforceable contract of adhesion. *See Berkson*, 97 F. Supp. 3d at 403-04. The court denied Gogo's motion to compel arbitration or transfer venue because, it held, "[n]either [plaintiff] can, at this stage of the litigation, be considered to have knowingly bound [himself] to the purported terms of an agreement adverse to them." *Id.* at 405.

The facts in *Berkson* are distinguishable from the facts in the instant case. In *Berkson*, the plaintiffs had only signed-up and used Gogo's product a single time. *Id.* at 370, 373. Additionally, when at least one of the plaintiffs signed-up for Gogo's product, he did not receive a confirmation e-mail containing a hyperlink to the terms of use. *Id.* at 370. Thus, the plaintiffs

in *Berkson* would probably have seen the terms of use hyperlink only once or a few times. After the court made its finding in *Berkson*, "the parties submitted convincing evidence" that plaintiffs, and others who used Gogo's product, were generally "sophisticated business persons," rather than average individuals. *Berkson v. Gogo LLC*, 147 F. Supp. 3d 123, 2015 WL 7960042, at *6 (E.D.N.Y. Dec. 4, 2015).

In contrast to the *Berkson* plaintiffs, the plaintiffs in the instant case purchased and used Gogo's product many more times. *See* Am. Class Action Compl. at ¶¶ 52, 56, 60. Each time the plaintiffs purchased the product they were presented with a website containing the hyperlink to the terms of use, and received an e-mail containing the same link. *See id.* at Exs. P & Q; Rossio Decl. at ¶ 19; Rossio Reply Decl. at Ex. 4. Then, each time they signed-in to use the product, they were again presented with the terms of use hyperlink. Letter from Anthony J. Laura, June 29, 2016, ECF No. 32, at Exs. A-B. Thus, unlike the plaintiffs in *Berkson*, the plaintiffs here were repeatedly warned that by using Gogo's product they were agreeing to the terms of use, and they were repeatedly presented with a hyperlink to those terms.

Moreover, as practiced individuals who frequently flew with an apparent need for internet access, it is reasonable to conclude that they are not unsophisticated lay internet users. In today's technologically driven society, it is reasonable to charge experienced users – as plaintiffs appear to be – with knowledge of how hyperlinks work and, by extension, how to access the terms of use they were – repeatedly – being told they were consenting to when they signed-in to Gogo's website.

The Court of Appeals for the Second Circuit's recent decision in *Starkey v. G Adventures, Inc.*, 796 F.3d 193 (2d Cir. 2015), undercuts plaintiffs' position. In *Starkey*, the plaintiff purchased a vacation package from the defendant. Shortly after purchase, the defendant sent

plaintiff three e-mails, each of which provided hyperlinks to defendant's terms and conditions and included statements to the effect of 'all passengers must agree to the following terms and conditions.' *Starkey*, 796 F.3d at 195. The terms and conditions included a forum selection clause, the central issue in that case.

The Court of Appeals held that the statements and hyperlinks in the three e-mails were sufficient to put the plaintiff on notice of the terms and conditions – and thus the forum selection clause – she was agreeing to by going on the vacation. *Id.* at 197. Although one of the e-mails had the phrase "terms and conditions" in bolded, all capital letters, the Court of Appeals did not indicate that such a presentation was necessary to its holding. *See id.* Significantly, the court noted that the "case would have been simpler to resolve" had a clickwrap agreement been used to acquire assent. *Id.* at 197 n. 3.

Here, not only did plaintiffs have an e-mail referring them to Gogo's terms of use, but they also – repeatedly – entered into clickwrap agreements and sign-in-wrap agreements. That Gogo did not use bold font or all capital letters is not dispositive in the special circumstances of this case. In the instant circumstances, it is reasonable to hold that plaintiffs had knowledge of and provided consent to Gogo's terms of use and the arbitration clause.

### 2. Plaintiffs' claims fall within the arbitration clause

The arbitration clause in the terms of use encompasses "any and all disputes and claims . . . . that relate in any way to or arise out of the Site, the Service or these Terms and Conditions." Rossio Decl. at Ex. 2, § 10. Gogo argues that plaintiffs' claims plainly fall within the scope of the broad arbitration clause, a point on which plaintiffs offer no opposition. *See* Defs.' Mem. of Law in Supp. of their Mot. to Compel Arbitration, Transfer Venue or, in the alternative, to Dismiss the Am. Class Action Compl., May 23, 2016, ECF No. 21, at 17-18.

Plaintiffs' allegations center around the performance and operation of Gogo's service. *See, e.g.*, Am. Class Action Compl. at ¶¶ 4-6. These allegations are within the scope of the broad arbitration clause included in the terms of use that plaintiffs agreed to.

### 3. There are no non-arbitrable federal claims

The final step in evaluating a motion to compel arbitration is to determine whether any of plaintiffs' claims are federal claims which the statute made non-arbitrable. Here, plaintiffs have not asserted any claims arising under federal law, obviating this step of the analysis. *See, generally*, Am. Class Action Compl.

## V. Conclusion

The sophisticated plaintiffs were repeatedly informed that by using Gogo's product they were agreeing to Gogo's terms of use. They received this notice each time they purchased Gogo's product and each time they signed in to use it. Plaintiffs cannot now claim that they were unaware of those terms. They are bound by the broad arbitration clause contained within the terms of use.

Gogo's motion to compel arbitration is granted. The parties shall proceed to arbitrate their claims in accordance with the arbitration clause they agreed to.

The case is otherwise stayed. *See* 9 U.S.C. § 3; *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 596, 193 L. Ed. 2d 471 (2015). The clerk is directed to administratively close the case.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: July 25, 2016
      Brooklyn, New York